# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

MARCUS EPSTEIN,

    Plaintiff,

v.

JACOBIN FOUNDATION, LTD,
MICAH EUTRICHT, JEB LUND, DAN
O'SULLIVAN, BHASKAR SUNKARA,

    Defendants.

JURY TRIAL DEMANDED

## COMPLAINT

This action arises out of the defamatory and false statements against Plaintiff Marcus Yung-gyu Epstein contained in an article written by Defendants Jeb Lund and Dan O'Sullivan, posted on the website of Jacobin Magazine, which is published by Defendant Jacobin Foundation, LTD ("Jacobin"), and edited by Defendants Bhaskar Sunkara and Micah Eutricht (collectively, "Defendants"). Plaintiff asserts that defendants recklessly and maliciously published the false assertion that he was drunk and "caromed" down the street at the 2016 Republican Convention. This falsehood has seriously damaged Plaintiff's reputation as a sober and fully recovered alcoholic, which has been instrumental for his professional and personal achievements over the last decade.

## I. THE PARTIES

1. Plaintiff Marcus Yung-gyu Epstein is an attorney and policy analyst. He is a citizen of the Commonwealth of Virginia and currently resides at 906 N. Fillmore St, Arlington, VA 22209.

1

2. Defendant Jacobin Foundation, LTD. (Jacobin), is a limited company organized under the laws of the State of New York and with its principle place of business in the State of New York. Jacobin publishes Jacobin Magazine, an online and print publication which describes itself as "a leading voice of the American left, offering socialist perspectives on politics, economics, and culture. The print magazine is released quarterly and reaches over 30,000 subscribers, in addition to a web audience of 1,000,000 a month." Jacobin's office address is 388 Atlantic Avenue, Brooklyn, New York 11217.

3. Defendant Bhaskar Sunkara is the editor and publisher of defendant Jacobin. Under information and belief, Defendant is a resident of the State of New York, currently residing at 554 Washington Ave, Pleasantville, New York 10570.

4. Defendant Micah Eutricht is an associate editor of defendant Jacobin. Under information and belief, Defendant is a resident of the State of Michigan residing at 685 Curvecrest Dr., Muskegon, Michigan 49445.

5. Defendant Dan O'Sullivan is a freelance writer who frequently contributes to Jacobin. His address is unknown, but under information and belief he is a citizen and resident of the State of Illinois. See Ryan Smith, *The viral, #DeleteUber campaign began with a tweet from a Chicago journalist*, Chi. Reader (Jan. 31, 2017) (describing defendant as living in a "Chicago apartment").

6. Defendant Jub Lund is a freelance journalist. Under reason and belief, Defendant is a citizen and citizen and resident of the State of Florida residing at 6210 Kennebunk Pl., Riverview, FL 33578.

II. JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Defendants because they have minimum contacts with the State of New York.

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties to this action and the amount in controversy exceeds $75,000.

9. Venue is proper in this District pursuant to 28 U.S.C. 1391(a)(2) because a substantial part of the events giving rise to the claim arose in this District.

### III. FACTUAL ALLEGATIONS

A. Jacobin Publishes an Article Defaming Epstein

10. On August, 8 2017, defendant Jacobin published an online article entitled "The Last Convention" ("the Article"), under the bylines of defendants Jeb Lund and Dan O'Sullivan on its website. The article described the authors' supposed first-hand experiences at the Republican National Convention in Cleveland Ohio during the week of July 17, 2016. The Article stated, with no additional context, "At night, a drunken Marcus Epstein, the erstwhile Pat Buchanan researcher and far-rightist who was exposed for violently attacking a black woman in 2007, caromed down Euclid Avenue." The original article is attached as Exhibit 1, and is archived at https://web.archive.org/web/20161019234118/https://www.jacobinmag.com/2016/08/rnc-2016-donald-trump-cleveland-republican-convention.

11. The Article referred to plaintiff by name, and was so understood by those who read the article to describe the Plaintiff, who had attended the Convention, previously served as a research assistant for Pat Buchanan and was charged with simple assault in 2007.

12. None of the Defendants contacted Plaintiff about the Article prior to publication.

13. Neither defendant Lund nor defendant O'Sullivan ever identified themselves to Plaintiff during the convention.

14. The statements that Plaintiff was "drunken" and that he "caromed" down the street are false and defamatory.

15. Plaintiff did not consume one drop of alcohol during the convention and has been completely sober from all drugs and alcohol since July 8, 2007.

B. Plaintiff Discovers the Defamatory Article and Asks the Defendants to Correct It

16. On November 8, 2016, "Chris" a friend who Plaintiff knew through Alcoholics Anonymous, sent him a Facebook message asking "Are you drinking?" Plaintiff said no, and asked why he asked the question. Chris responded by sending a link to the Article. These messages (with names redacted) are attached as Exhibit 2.

17. "Chris" further noted that another friend, "Will," "sends this all to me." Plaintiff knew Will through Alcoholics Anonymous.

18. Plaintiff had not previously seen the article until November 8, 2016, four months after its initial publication. According to Defendant Jacobin, the publication has "a web audience of 1,000,000 a month." *About*, Jacobin Mag, https://jacobinmag.com/about (accessed August 6, 2017).

19. On November 8, 2016, Plaintiff sent an email to defendant O'Sullivan and to "editors@jacobinmag.com", informing them "I was not drunk at the convention, and in fact have not drank in over nine years. I don't know where your reporters got that idea" and asking them to remove the false and defamatory passages of the Article. Plaintiff's e-

mails with Defendants are attached as Exhibit 3.

20. On November 8, 2016, Defendant Sunkara responded "We'll review during business hours tomorrow and will make a correction as necessary."

21. On November 10, 2016, Micah Uetricht, a contributing editor for Defendant, responded to Plaintiff to inform him, "We have corrected the piece. I did not issue a correction at the bottom as I assumed doing so would simply draw more attention to the former text, but I can do so if you'd like."

22. The article no longer had reference to Mr. Epstein being "drunken" but was otherwise unchanged. The revised article at the time of filing is attached as Exhibit 4, and can be viewed at https://www.jacobinmag.com/2016/08/rnc-2016-donald-trump-cleveland-republican-convention.

23. On November 11, 2016, Plaintiff responded to Mr. Uetricht informing him that he did not "carom" down the street and explaining that "bumping into people and bouncing off the walls conjures up the appearance of intoxication in a reasonable person's mind. Thus, your revised passage still creates the false light that I was drunk."

24. As of date of filing, Mr. Uetricht has never responded to Plaintiff's e-mail, and none of the defendants has explained why they included statements that were so obviously false, defamatory and lacking in newsworthiness.

C. The Article Harms Plaintiff's Reputation

25. The Article's defamatory falsehoods have caused significant harm to Plaintiff's reputation.

26. During his early 20s, Plaintiff had struggled with alcohol abuse. Plaintiff's disease led him to several misdemeanor arrests, most seriously, a misdemeanor assault

charge on July 7, 2007, at age 24, which was later dismissed. The Article referenced this arrest.

27. On July 8, 2007, following this arrest, Plaintiff recognized the seriousness of his disease and made a decision to turn his life around. Through a combination of hard work, and therapy, and a twelve step program, Plaintiff has remained sober since July 8, 2007.

28. In late May of 2009, a blogger discovered Plaintiff's simple assault charge and wrote about it. This led a number of publications to attempt to publicly shame Plaintiff.

29. Plaintiff has always taken full responsibility for the mistakes he made while drinking, and has built his reputation based on his accomplishments he achieved in sobriety.

30. Plaintiff's sobriety is a key part of his reputation. The Article's false and malicious charge that he was drunk seriously harmed his reputation both professionally and personally.

31. Plaintiff was accepted to in 2012 and graduated, magna cum laude, in 2014, from the University of Pennsylvania Law School. Plaintiff disclosed his past legal problems and cited his sobriety as the sole mitigating factor. Many of his professors and administration officials praised him for his sobriety.

32. Plaintiff was admitted to the Maryland Bar in 2015. Plaintiff disclosed his past legal problems, and cited his sobriety as the sole mitigating factor. During his character and fitness interview, he was told that he would be recommended for admission due to his long-term sobriety.

33. Plaintiff was employed at the antitrust and regulatory boutique Kirstein &

6

Young, PLLC from September 2014-March, 2016, leaving on positive terms. Plaintiff disclosed his past legal problems and noted his sobriety as the sole mitigating factor. His employers frequently praised him for his sobriety.

34. Since 2016, Plaintiff has been self-employed attorney and antitrust policy expert. Plaintiff disclosed his past legal problems to many of the clients and law firms he works with, and discussed his sobriety as a mitigating factor.

35. By falsely stating and later implying that Plaintiff was drunk, Defendants have undermined Plaintiff's reputation as a sober and fully recovered alcoholic.

D. Plaintiff's Status of a Private Figure

36. Plaintiff was not a public figure at time of publication. Prior to 2009, he had written publicly on politics and made some minor media appearances, but had consciously avoided any public attention between the negative attention surrounding his arrest and publication of the article.

37. Plaintiff had attended Republican National Convention as a private citizen. He had no involvement with the Convention or the Trump campaign at the time.

38. Plaintiff's inclusion in the article had no newsworthiness. The sole purpose was to embarrass him for a then over nine-year old mistake he made at age 24, and then make it appear as if he had not made any reforms to his behavior by falsely claiming he was drunk.

IV. LEGAL CLAIMS

**COUNT ONE: DEFAMATION/LIBEL UNDER NEW YORK STATE LAW**

39. Plaintiff re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if they were fully set out herein.

7

40. Under New York Law, libel consists of 1) a false statement 2) published to a third party without privilege or authorization 3) with fault amounting to at least negligence 4) that caused special harm or defamation per se. *Dillon v. City of New York*, 261 A.D.2d 34, 38 (N.Y.A.D. 1 Dept. 1999).

41. In the Article, Defendants falsely and maliciously asserted Plaintiff was drunk and "caromed" down the street.

42. Plaintiff is not a public figure, his attendance at the Republican National Convention was not newsworthy, and defendants have no other privilege to defend.

43. Defendants made their false claims that Plaintiff was drunk and caromed down the street at the Republican National Convention recklessly and maliciously. They had no basis for these claims, made no attempt to contact Plaintiff prior to publication, and continued to use falsely state he "caromed" down the street, giving the impression he was drunk, even after Plaintiff informed them of the falsehood.

44. Plaintiff's sobriety is the foundation of his reputation, which the defendants intentionally and maliciously undermined.

45. The Defendants' defamatory falsehoods have caused significant harm to Plaintiff's reputation.

46.

## V. PRAYER FOR RELIEF

47. As a proximate result of Defendant's conduct as set forth in all the preceding paragraphs, Plaintiff was damaged.

48. For the torts of defamation and libel, Spencer demands such legal or equitable relief as provided by law, including, but not limited to, the following:

8

a. Compensatory damages of 150,000 for damages to his reputation;

b. Punitive damages of $100,000 for Defendant's reckless and malicious conduct;

c. An order requiring the Defendants to remove their defamatory statements from the website and issue a full correction/retraction, making clear that they never had any evidence that Plaintiff was drunk or that he caromed down the street;

d. Reasonable attorney fees and costs in bringing this action;

e. Prejudgment interest; and

f. Any other relief that this Court deems just and equitable.

## VI. MISCELLANEOUS

49. Trial by jury is demanded.

50. Plaintiff reserves the right to amend this Second Amended Complaint, including the right to add additional counts and/or parties through discovery and up to trial of this action as investigation and discovery further warrant.

WHEREFORE, Plaintiff is seeking damages in an amount to be demonstrated by the evidence up to the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) in compensatory damages for damage to his reputation, ONE HUNDRED THOUSAND DOLLARS ($100,000) in punitive damages, his attorneys' fees and costs and such other relief as the Court and/or jury may award.

Dated: August 7, 2017                    Respectfully submitted,

*/s/ Noah B. Peters*
_____

Noah B. Peters, Esq.
1015 18th Street, N.W.
Suite 204
Washington, D.C. 20036
Tel:  (202) 499-4222
Fax:  (202) 318-7071
nbp@becounsel.com

**Counsel for Plaintiff**